Appeal No. 06-1401 Merck v. Hi-Tech Appeal No. 06-1401 Merck v. Hi-Tech Appeal No. 06-1401 Merck v. Hi-Tech Interim Judge Plager Eternal Disclaimer by its explicit terms prohibits the enforcement of a second-issued patent after an earlier patent claims substantially the same invention as expired. It's been well-established law that a Termal Disclaimer is final, it's irrevocable, and it cannot be altered by the or withdrawn, by the applicant, by the patent office, or by any court. This court has so held in, for example, the Bayer case, the patent office has recognized this in the manual of patent examining procedure has an entire section devoted to Termal Disclaimers as well as double patent rejections and how they can be obviated and it has never been questioned. Yet in this case, both Merck and the District Court are asserting that somehow when Congress enacted the Hatch-Waxman Act back in 1984, that Congress, without saying a word, revoked, nullified as the case may be, the very explicit terms of the Termal Disclaimer that Merck in this case But when you say without saying a word, I don't think that's accurate because in the provision dealing with delays caused at the patent office in subsection B, it explicitly said that there shall be no term extension if a Termal Disclosure has been filed. Now how do you get around that when Congress specifically barred it for one type of delay and said nothing about the other type of delay? Why doesn't that suggest at least or indicate that Congress did not intend to bar term extensions even though there had been a Termal Disclosure where the delay resulted from the procedures of the Hatch-Waxman Act? I think, Your Honor, the answer to that question is that 154B to which you are referring was enacted some 10 years after the Hatch-Waxman Act. As, for example, Judge Plater's opinion in the V.E. Holdings case which we cite makes clear. But if you're right in your interpretation, there was no need for B, was there? B was addressed 10 years later in a context involving patent office delays at a time when the issue was actually brought before Congress and there was concern over what the language meant. We know that several years after the enactment of Hatch-Waxman, the patent office took it upon itself to implement the regulation which it added words to a regulation to fill in what presumably the patent office considered to be a gap at that point. But when Hatch-Waxman was enacted... I thought B was added in response to the treaty obligations at that time. Am I mistaken? I'm sorry, Your Honor. Are we talking 154B? 154B. 154B has to do with extensions for patent office delays. It's unrelated to the Hatch-Waxman. I understand that, but I thought that amendment... I may be confused. I thought that amendment was added in response to our treaty obligations at that time. Your Honor, it may have been part and parcel of that, but in any event, it addresses an entirely different issue than was considered at the time of the Hatch-Waxman Act. We're talking about taking a position here. Let's go back to the terminal disclaimer. The terminal disclaimer, by its terms, unequivocally disclaimed the portion of the 413 patent that extended beyond expiration of the 115 patent. Well, let's suppose that an extension under the Hatch-Waxman Act had been requested in the 115 patent. Yes, Your Honor. And that the termination date had been extended 2 years. Okay. Wouldn't that automatically extend the termination date of the 413 patent? On the Bayer v. Carlsbad, I believe it would, but that's not what happened. But you're arguing that the terminal disclaimer is like an irrevocable waiver of any term beyond that date. It can never, ever, ever be changed. Well, Your Honor, what Bayer v. Carlsbad tells us is that the terminal disclaimer ties the life of the second patent to the life of the first. The terminal disclaimer is the case. But the terminal disclaimer doesn't say that it can never, ever be changed if there are other statutory provisions or other factors that come into play. If there is an extension as a matter of law that has happened, for example, in Gatton, what was addressed in Bayer v. Carlsbad, that extends the earlier patent, yes, it carries the other through it. So in that sense, I suppose it's true that there are circumstances under which the later patent gets extended. Isn't that the effect of the Hatch-Waxman Act, though? There are other circumstances provided by statute where the term of a patent can be extended whether the term is either the term as originally set forth or the term as curtailed by a terminal disclaimer.  and perhaps carries with it a later patent to which it voluntarily had its life tied by the patent owner is very different than saying that a patent owner who, as the quid pro quo to get its patent allowance in the first place, gives up term. If you look right on the face of the patent, what the patent office said about the terminal disclaimer is that it disclaims the portion after expiration of the earlier patent. Well, I understand that, but to get back to my hypothetical, what you're saying is that if the effect of the Hatch-Waxman Act was applied to the 115 patent, to extend that patent, that would automatically, by operational law, extend the term of the 413 patent, even though the 413 patent has a terminal disclaimer, citing base. But it has been terminally disclaimed only as to the date of expiration. That's right, but just follow me for a minute here. So you're saying that the effect of the Hatch-Waxman Act if applied through the 115 patent is the extension of the terminally disclaimed patent as well. As a matter of happenstance. But you're arguing that the Hatch-Waxman Act could not be applied directly to the 413 patent because? Because the difference is this, Your Honor. The terms of the disclaimer can't be revoked. There's no revocation of the disclaimer in the hypothetical. It can't be revoked in the hypothetical either. It's not being revoked in that case, Your Honor. In that case, effect is being given to the terminal disclaimer because the terms of the disclaimer are that the second patent, the evil is the second patent can't last longer than the first. That's what the terminal disclaimer is all about. I thought that would have been your answer to Judge Lynn, not that the terminal disclaimer fixes a particular date, but that the terminal disclaimer by definition locks the second patent into the first patent. And if the first patent gets extended, well, that's the way it goes, as the Baer case tells us. But you can't unlock it. I would have thought that would be your argument. It took me a little while, Your Honor, but I think that's what I just said. I'm pretty sure that the answer I just gave is exactly that, and that is exactly what our argument is, that you're not revoking the terminal disclaimer in the hypothetical that you have raised, Your Honor. Or was the terminal disclaimer being revoked in the Baer versus Carlebad case? In fact, in Baer versus Carlebad, the court made it very clear that terminal disclaimers can't be revoked. It made it very clear that it wasn't happening in that case either. Well, but you said that you approached it in terms of revoking the terminal disclosure. I take it the district court approached it in terms of extending the shortened term, which isn't quite the same thing, is it? The effect is exactly the same. In this particular case, Your Honor, what the district court did was construe what it believed to be silence, and it determined that the silence was controlling as to what Congress meant. We contend that silence, under the circumstances of this case, cannot possibly wipe out all the years of jurisprudence related to terminal disclaimers and their irrevocability. The district court simply concluded, based on what happened 10 years later, that if we addressed it 10 years later, that it must have been what we meant 10 years earlier in a completely different context. Again, the law does not support that type of statutory construction here. We look to see what happened in the statute, and I'm not sure if I'm beyond my six minutes yet. You are into your nine-minute rebuttal time. But feel free to continue. It's up to you. Well, I don't want to lose too much of my rebuttal time, but let me simply say this. What was made clear at the time of enactment of the Hatch-Waxman Act was that except for certain limitations that were described regarding scope of claims and what extent the patents could apply to, all provisions of patent law, all provisions of patent law, which presumably would include all the law that relates to the irrevocability of terminal disclaimers and anything else, were left untouched. So what we have is a situation where Congress said all provisions, it meant it. Double patenting rejections, which are obviated by terminal disclaimers, are nothing more than another kind of defense. In this instance, we're arguing that that particular defense was taken off the table by the terminal disclaimer. And the hypothetical we raise in our reply group, I think, really highlights exactly what we're talking about here. If the 413 patent had issued with no double patent rejection, and then it were being litigated, no terminal disclaimer, no double patent rejection, and still term left on the 115 patent, 413 still had ten years since following the approval of the NDA, during which Merck enjoyed all its benefits. If then a myriad of defenses were raised in opposition, one of them was double patenting, Merck could have at that time taken double patenting out of the game, just as in Bay v. Carlsbad, by filing a terminal disclaimer at that point. That would bring the date back to the expiration of the earlier patent. Where's the extension gone? They can't get it at that point. Already they would have given it up, they would have tacked it on, but the terminal disclaimer would take them back. It makes no sense for a different result, depending on when it is entered into the case, when the terminal disclaimer is made. All right, wonderful. Very good. Mr. Bechtold? May it please the Court. The fallacy in Hitek's argument is that they're trying to manufacture a conflict between two provisions, two grants of right, that are distinct, that have different rationales and different purposes. The grant of an original patent term is the grant of a right of marketing exclusivity for a limited period of time. A patentee can cut back on that period of limited marketing exclusivity by filing a terminal disclaimer. The Hatch-Waxman restoration was enacted for two reasons. First was in recognition that a patentee that needed to get regulatory approval in order to sell the product effectively lost the marketing exclusivity that it was granted under the original patent. Now, that would apply whether the original patent was granted with a full term or with a reduced term because of the terminal disclaimer. The other rationale for the Hatch-Waxman restoration was that Hatch-Waxman gave generics the opportunity to initiate the regulatory process while the patent was still in effect without becoming infringers. And symmetrically, it said that the patentee should not suffer by loss of term from the fact that it had to get regulatory approval before it could start to sell. The terminal disclaimer always has the effect of shortening the marketing exclusivity whether the patent gets a Hatch-Waxman restoration or not. Why did you file the terminal disclaimer in this case? The terminal disclaimer was filed in this case to avoid an argument of obviousness that will happen. Meaning that your patent or your application was unpatentable. Your claims in what turns out to be the 413 were unpatentable without it, right? I think the law is clear that there is no admission from filing a terminal disclaimer. It simply is a procedural device. I'm not asking whether there was an admission. The examiner expressly said your claims were unpatentable. Yes. The examiner gave an obviousness double patent. Your claims were unpatentable. You can't have this patent. You came back and said how about if we file a terminal disclaimer will that avoid that obviousness double patent whatever obviousness double patenting may mean. Will that avoid that invalidity issue or unpatentability issue if you prefer. The examiner said sure. Why would the examiner say that? I suppose the examiner would say that because the examiner sort of viewed your unpatentable claims standing independently as okay if they were merged into the earlier what is it the 116? Wasn't that the 115? 115. The earlier 115 patents. So in effect what you did am I correct effectively what you did was merge the new claims into the 115. No with respect your honor that's not correct. The 115 patent and the 413 patent retain their individual lives. The terminal disclaimer under the authority from this court avoids any issue of obviousness double patenting. But we still have two patents. All that's happened is as originally granted those two patents have a common expiration date. I'm familiar with the legal technicalities and I understand how the patent bar views it. I'm trying to analyze this from the viewpoint of what practically is going on. And what practically is going on is you agreed to lock yourself into the 115 patent rather than you could have appealed the examiner's unpatentability issue couldn't you? We could have your honor. But you chose not to. The reason I say the patents are not merged is 115 could be held invalid and 413 could continue to exist. Yeah merger was perhaps the patents aren't merged. What happens is those claims are treated as a practical matter as if they had been part of the earlier one because they're going to expire with the earlier one. Isn't that true? But for this extension issue they would have expired with the 115. That is correct. And that is all the terminal disclaimer does is you have two patents each with its own life but with a common expiration date. But my point is that has nothing to do with the Hatch-Waxman restoration because when the 413 patent was branded with its shortened term based on the terminal disclaimer the expectation was that the marketing exclusivity would exist for that term. Now as a result of regulatory delay six years of that term evaporated before Merck could ever sell the product. Hatch-Waxman simply says I'm going to give you back the marketing exclusivity or part of the marketing exclusivity that you would have had if you didn't have regulatory delay. That does not undo the terminal disclaimer because the terminal disclaimer still means the patent even with its Hatch-Waxman extension restoration expires earlier than it would have if the terminal disclaimer had not been filed. Section 156 that provides for Hatch-Waxman restorations has a number of conditions in it. A number of very stringent conditions. Let me ask you about 156. The trial judge in King Pharmaceuticals says However, section 156 is plain and unambiguous. A terminally disclaimed patent is not barred from receiving a section 156 extension. I don't find any language in section 156 that even talks about terminally disclaimed patents. Do you? Is there some language in there that I missed? No, there is not, Your Honor. So it's not plain and ambiguous on the question of terminal disclaimers, is it? Well, I think it is, Your Honor. Only if silence is plain and ambiguous. Statutory construction. The first maximum of statutory construction is to give the statute its literal effect. You don't read into the statute limitations that Congress didn't put there. But by your very own words, the Hatch-Waxman Act is entirely separate from the terminal disclaimer process. Isn't that what you started out telling us five minutes ago? Absolutely. So that we can't read into 156 the absence of terminal disclaimer language as being meaningful. What we're dealing with is an ambiguous situation, aren't we? I'm just trying to understand the ground. I don't think it's ambiguous at all. Terminal disclaimer has only one effect. It cuts back on the original term of the patent that's granted. So this patent, when it was granted, had an original expiration date that was shorter than it would have been but for the terminal disclaimer. Full stop. That's the effect of a terminal disclaimer. Hatch-Waxman restoration is an entirely different proposition. And what it says is, even though you cut back on that time, you lost still more time because you had to go through regulatory review before you could get on the market. And although Section 156 does not have express language that says, and it's okay if the patent had a terminal disclaimer, it does recite a number of conditions. And I point out, in response to the question that Judge Friedman asked, at the same time that Congress amended 154B to put in the language that accepted terminal disclaimer, it also amended 156 and it didn't put the language in. And at that time, the patent office... Why did they amend 154? They amended 154 because they wanted to show that when you had an extension due to delays in the patent office, you couldn't take advantage of that if you had terminally disclaimed the patent. That's consistent with the patent office's own rules for some years, isn't it? It is, but when they amended Section 156, the patent office had also been on record for almost 20 years of having granted hatch-waxman restorations to patents that had been terminally disclaimed. Presumably, Congress knew that. There has been an unvarying practice in the patent office for that whole period of time to grant hatch-waxman restorations in exactly the same circumstances we have here. When it came time for Merck to seek its restoration under hatch-waxman, it had two patents. The 413 patent HITECH has admitted meets all the statutory requirements for patentability, and they admitted it meets all the statutory requirements for a hatch-waxman restoration. They had two patents. Those two patents happened to expire at the same time. The 115 patent doesn't cover the drug drosolamine. It would have been impossible to extend that patent to cover something that it didn't claim. What it extended was the 413 patent. It still wound up with no more period of marketing exclusivity than it would have otherwise had. In effect, as I understand your argument, you're saying that the extension of term provided by the Hatch-Waxman Act was actually less than the time that otherwise was lost. That's correct. We have this visual, and I think we've given handouts to the court. When the 413 was first granted, it had 15 years and 5 months of marketing exclusivity from the time it was granted to the time it expired. Without the terminal disclaimer, it would have had 17 years. When the URAA came along, there was an adjustment of the original expiration date that added 6 months. After the FDA approval wiped out 6 years of that patent term, there was only 10 years left, and the Hatch-Waxman restoration only restored 3 years and 5 months. So Merck still winds up... Didn't you get an additional extension from the pediatric... There is an additional extension for pediatric, which I think is another good point, Your Honor, because they're getting... That's not on your board. Well, no, it's not. And HITECH doesn't question that a patent that's been terminally disclaimed can get a pediatric extension. But you're correct. The pediatric extension, again, is a third right, and it's based on the fact that Merck did the studies required to show the effect of the drug in children, and the statute says if you do that, you get an additional 6 months. It says that no matter whether you've got a patent or you don't have a patent, that whether you've got the terminal disclaimer or not. So my point is that at the end of the day, the Hatch-Waxman restoration did not undo the terminal disclaimer. The terminal disclaimer still has the effect it always has. The only thing that's happened is that Merck got the Hatch-Waxman restoration that it was entitled to have whether it had a patent that was terminally disclaimed or not and I just want to refer one to Mr. Medlich's hypothetical. In fact, and there is ample examples of this, if the terminal disclaimer had been filed after the Hatch-Waxman restoration was pranked, the patent office practice is simply to dial back to the new original expiration date and take that off the term of patent. The patent office does that routinely. So there's no anomaly there. Again, a terminal disclaimer, whether it's done before the patent issues or after the patent issues still has the same effect. It reduces the period of exclusivity that the patent takes. But it has no effect. It doesn't do away with the right to a Hatch-Waxman restoration that has an entirely different basis and principle. That, of course, is the issue. That is the issue. What we hope is clear. But the fact is that the effect of the Hatch-Waxman restoration is to extend the term of the second patent beyond what it would have been after the terminal disclosure was granted. I mean, you've talked in terms of exclusivity, but in terms of the term of a patent, when you have a terminal disclosure, it means that you've given up the portion of the term after that date. And this has the Hatch-Waxman Act has the effect of extending part of the term you gave up. But just as Judge Lynn pointed out, Honor, when the 115 patent was granted, it had a fixed ending date. Even on high-tech's analysis, we could have gotten a Hatch-Waxman restoration on that if it had covered the product, but that would have extended that patent beyond its expiration date. Beyond its expiration date, but not beyond a date that had been given up by filing a terminal disclosure. There was no terminal disclosure on the 115. I'm not suggesting that's how it should come out. I'm just saying, as I understand, that's his basic argument, is that you have it. Let's say you have a patent that expires in 2015, and you file a terminal disclosure cutting off to 2010. Then the expiration date is 2010. Then you get a Hatch-Waxman Act restoration of three years. The effect of that is to extend the patent term to 2013, even though it previously had been cut back to 2010. As I understand his argument, he's saying that in effect is wiping out part of the terminal disclosure, and the terminal disclosure can't have that done to it. With all respect, Your Honor, all that the Hatch-Waxman restoration does is to extend the expiration date of any patent, whether that patent was originally granted for a full term or a reduced term. There's no logical distinction between the two. There's no logical reason to say, well, if you got the patent for the full term, you can tack on four years for a Hatch-Waxman restoration, but if you only got it for an abbreviated term, you totally lose your Hatch-Waxman restoration. Let's test that in light of Mr. Mitlick's hypothetical. What would happen, what would be your view of the situation if the case arose in which the validity of the 413 was being challenged in court as unpatentable because of this obviousness, double-patenting problem, no terminal disclosure having, waiver having been given originally, but you got it from the patent office without them spotting the problem. And now it's being raised in court. And at this point, you say, okay, we'll take a terminal, we'll give you a terminal disclosure and avoid the double-patenting problem. That's his hypothetical. And then the question comes along, can you now get the extension? In the hypothetical, so I understand, is the 115 patent still in existence? Because that's important. Take it either way. If it's not in existence anymore, then it has already expired and I can't terminally disclaim against it. So obviously it must be in existence. So we understand it's in existence. Did the 413 patent get its Hatch-Waxman restoration before all this happened? Let's say it did. Because if it hasn't, it can't get it because there's a 60-day window to get it. In that circumstance, yes, the patentee can say, I will now file a terminal disclaimer, I will cut the original expiration date back and therefore reduce my period of exclusivity, but I'm still entitled to the Hatch-Waxman restoration. And that is the practice of the patent office as follows. I'm sure we'll hear from Mr. Matlick as to what he wanted to do with that. Thank you, Mr. Bechtold. Mr. Matlick, we'll restore two additional minutes. Thank you. Did I have your hypothetical correct? You did. You did. In response to Mr. Bechtold's comment about that has been the practice, if it is, I'm unaware of it. I haven't seen any cases that have so detailed, so I really can't comment on that. Our view, obviously, would be that in the circumstance of the hypothetical, if Merck would want to wipe out the double patent defense, it's got to terminate this claim back to the expiration date of the 115 patent. What about the extension? The extension goes with it. Why? Because to get rid of double patenting, the evil of which is to have a time-wise extension beyond the earlier patent, which claims substantially the same invention. That's what they have to do. They have a choice. And the choice is, at that point, litigate the issue. But they're making a choice at that point, similar to the one they made at the patent office, that they don't want to litigate the merits of that particular defense. And for that, they have to give up something. Mr. Bechtold wants them to give up less than what we contend they have given up by the voluntary relinquishment of term. Well, they gave up something, didn't they? They gave up the original date they would have had, but for the terminal disclaimer. But all they're saying now is, and that's fine, we'll live with that, but we want our extension on top of it. That's exactly what they're saying, Judge. And I guess my problem is, I don't know where in the statute they find authorization for anything like that. And that's really what we're here to talk about. The question is not whether the statute authorizes it. The question is whether the statute prohibits it, according to Mr. Bechtold, because he says these are two separate statutes. Well, they are indeed two separate statutes. We believe that the error in the district court was looking for language in 156 to prohibit tacking on an extension, when it should have been looking for something in the Hatch-Waxman Act to permit it. Section 156 wasn't adopted in a vacuum. At the same time when Hatch-Waxman was adopted, changes were made to Section 282. Substantive patent law was somewhat affected, but only in the ways that Congress addressed. Congress addressed in 282, adding an entirely new defense. They added a defense that you could attack the validity of the extension itself. In other parts of the statute, as Mr. Bechtold has pointed out, there are non- patent exclusivities that are available. So the brand company gets plenty. How do we decide an issue? I'm sorry, go ahead. It seems to me, whether the patent is subject to a terminal disclaimer or not, every patent has a certain life. It ends at a certain point. Hatch-Waxman serves the purpose of simply restoring a portion of the life of the patent lost because of the regulatory process. So you're getting more than what you bargained for, whether it's a patent with a full term or a patent with a truncated term. And what you're getting is an additional period to compensate for the time lost in the regulatory process. How is that in any way in conflict with the statutory provisions regarding terminal disclaimer, which simply decide what the term is going to be to start with before the adjustments under the Hatch-Waxman Act? Your Honor, if you frame the question as the terminal disclaimer simply decides what the term is going to be, then you reach that conclusion. We contend, however, that that's not what the terminal disclaimer does. Merck wants the terminal disclaimer to say something it doesn't say. But why does it say anything more than that? That's just, obviously, you wouldn't have gotten the patent in the first place had you not acceded and filed a terminal disclaimer or contested the rejection. But all that means is that when that patent is granted, it has a truncated term. But the truncated term by a voluntary act has been inextricably tied to the expiration of the earlier patent. This is no different... That's true in accordance with the terminal disclaimer mechanism and the interstage left, the Hatch-Waxman Act. Your Honor, again, my contention is that silence on this issue can't wipe out and invalidate the terminal disclaimer any more than it wiped out and invalidated the right of any litigant to assert any other defense. How do we pick between these two statutes when Congress is silent and there's nothing to tell us which one to pick? Your Honor, I think that the silence here has to be decided in favor of the position you're advancing because what 156 does is it enumerates that certain patents can get extended. It doesn't address the validity or enforceability of those patents. We know when we cite cases in our brief, this Court has on countless occasions invalidated or held unenforceable extended patents. The fact that a terminal disclaimer has been asserted or has been filed by a litigant addresses one possible defense, double patenting. They took it off the table. It is no different than any other defense that anyone else would have asserted. Certainly no one would make an argument that you can extend an invalid patent or you can extend a patent that's otherwise unenforceable for some other reason. All we're trying to do here is we're not trying to take their extension away. We're trying to enforce the terms of the terminal disclaimer that they have. All right. Thank you very much, Mr. Redlich. The case is submitted. That concludes our hearings for today.